IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CLIFTON ORLANDO SOLOMON                                                    PLAINTIFF

v.                                    Civil No. 4:18-cv-04001

OFFICER CAMPBELL, Miller County
Detention Center ("MCDC"); SERGEANT
SANDERS, MCDC; WARDEN WALKER,
MCDC; SERGEANT GRIFFIE, MCDC; and
OFFICER HENSLEY, MCDC                                                      DEFENDANTS

## MEMORANDUM OPINION

This is a civil rights action filed *pro* se by Plaintiff, Clifton Orlando Solomon, under 42 U.S.C. § 1983. Before the Court is a Motion for Summary Judgment filed by Plaintiff (ECF No. 77) and a Motion for Summary Judgment filed by Defendants. (ECF No. 83). Plaintiff and Defendants have filed Responses (ECF Nos. 88, 90). Defendants have filed a Reply to Plaintiff's Response. (ECF No. 94). The Court finds this matter ripe for consideration.

### I. BACKROUND

Plaintiff is currently incarcerated in the Arkansas Department of Correction—Ester Unit. His claims in this action arise from alleged incidents that occurred between December 2017 and April 2018, while he was incarcerated in the Miller County Detention Center ("MCDC") as a pre-trial detainee. (ECF No. 1, p. 3). Viewed in the light most favorable to Plaintiff, the relevant facts are as follows.

Plaintiff was booked into the custody of the MCDC on November 24, 2017. (ECF No. 85-2, p. 1). Between December 6 and December 22, 2017, Plaintiff submitted five grievances complaining that Officer Campbell made a verbal threat against him on December 5, 2017, when Officer Campbell stated that he "would get [Plaintiff] when [Plaintiff] get out." (ECF No. 85, pp.

1

1-3). Because of this threat, Plaintiff feared for his life and wanted to file criminal charges against Officer Campbell. *Id.* On December 8, 2017, Corporal Richard Henderson submitted a Supervisor Statement regarding the incident. (ECF No. 85-5, p. 1). This report stated in part that Officer Campbell reported "multiple inmates were making comments to him like (you may not always be an officer) or (bet you wouldn't act so tuff if I saw you in the world) so Officer Campbell said he responded with (that is fine I'll see you on the outside some time)." *Id.* On December 29, 2017, Jeffie Walker, the Warden at the MCDC, officially reprimanded Officer Campbell because of his "use of offensive words or actions" toward Plaintiff. (ECF No. 85-2, p. 2).

On January 31, 2018, Plaintiff was moved to the recreation yard, along with the other inmates housed in Max D (general population), because Max D had been cleaned with bleach and the inmates claimed the smell was too strong. According to the affidavit of Warden Walker, Plaintiff began using loud and disrespectful language towards her in the recreation yard. (ECF No. 85-7, p. 1). Because Plaintiff was so disruptive, Warden Walker determined there was a safety and security risk that the other inmates could be incited by Plaintiff's actions. She then moved Plaintiff to Max E and placed him in administrative segregation for a "cooling down period." *Id.* Plaintiff did not receive notice of any disciplinary charges against him after he was moved to Max E. Plaintiff was returned to general population on February 7, 2018. *Id.* During the seven days Plaintiff was in Max E, he was allowed out of his cell for one hour each day. He was also provided access to the shower, phone, and kiosk. (ECF No. 94-2).

On or about March 18, 2018, Defendant Walker opened a piece of Plaintiff's legal mail outside of his presence. (ECF No. 85-7, p. 2). Once Plaintiff noticed that his legal mail had been opened, he questioned MCDC officials about who was responsible. Warden Walker met with Plaintiff on March 20, 2018 and explained she had opened the mail by mistake but did not view

the contents of the mail. (ECF No. 85-7, p. 2).

On April 17, 2018, Officer Hensley submitted a report regarding an incident involving Plaintiff which states in relevant part:

> On said date and time, I noticed an extra tray become missing on the tray cart after chow. I then reviewed the cameras and noticed Inmate Clifton Solomon come back around the end of the line and grab another tray. I then wet to Max Delta in an attempt to move Solomon to a lock-down cell pending disciplinary. After multiple orders, Solomon continued to demand 'rank' and it wasn't until other officers arrived that Solomon finally grabbed his belongings and was escorted to Max Echo. Once in Max Echo and a supervisor present, Solomon continued ignoring lawful orders to get into his cell and demand a higher supervisor. Solomon finally complied after a show of force with OC Spray…I also wrote Solomon up for lying due to the fact that he stated I told him he could have the tray when in fact I did not.

(ECF No. 85-5, p. 8). On April 23, 2018, Plaintiff was served with a Discipline Procedure and Notice Form, based on the incident involving Plaintiff and Defendant Hensley. (ECF No. 85-5, p. 9). On April 26, 2018, a hearing was held and the charges against Plaintiff were dismissed by the MCDC's Disciplinary Committee. Plaintiff declined to call witnesses during the hearing but submitted a statement in support of his position. (ECF No. 85-5, pp. 10-11).

The MCDC's policy and procedure manual regarding disciplinary action for in-house violations by inmates provides in relevant part:

> 2. Any violation of the rules and regulations that the deputy deems warrants more than a verbal reprimand, will be documented on an Inmate Disciplinary Action Form to generate disciplinary action against an inmate.
> 3. The Inmate Disciplinary Action Form shall have the inmate's name, CCN number, offense that occurred in detail, and deputy signature.
> 4. Along with the Inmate Disciplinary Action Form, an incident report shall be generated and forwarded to the shift supervisor for a hearing.
> 5. Shift supervisor will forward the disciplinary action form, incident form and action taken to the Lieutenant for review and final disposition within twenty-four (24) hours of the incident.
> 6. The Detention Administrator or designee will then review all disciplinary action taken . . . .

(ECF No. 85-6, pp. 9-10).

Plaintiff filed his Complaint on January 4, 2018, naming Captain Adams, Officer Campbell, Corporal Henderson, Sheriff Jackie Runion, Sergeant Sanders and Warden Walker as Defendants. (ECF No. 1). He alleges Defendant Campbell violated his civil rights when he made a verbal threat against him stating "he was going to get me when I got out as well as he stated: I put that on my kids." *Id.* at p. 4. Plaintiff also claims that Defendants violated his constitutional rights because they did not file or assist Plaintiff in filing criminal charges against Defendant Campbell for verbally threatening Plaintiff.

On March 19, 2018, Plaintiff supplemented his Complaint adding Sergeant Griffie as a Defendant and again naming Warden Walker as a Defendant. In the Supplement Plaintiff alleges his constitutional rights were violated when he was placed in lockdown from January 31, 2018, until February 7, 2018, without receiving a disciplinary report or hearing. (ECF No. 17).

On April 2, 2018, Plaintiff supplemented his Complaint alleging Defendant Walker violated his civil rights when she opened his legal mail when he was not present. (ECF No. 22).

On May 10, 2018, Plaintiff's supplemented his Complaint alleging Defendant Hensley violated his constitutional right to due process when he:

> . . . made other false statement in disciplinary report. Officer Hensley put me in disciplinary segregation on 4-17-18 which is an improper procedure and a violation of due process due to the fact that I have been in Max-E and my privileges of visitation and commissary were taken by Officer Hensley not the disciplinary committee, this also is an improper procedure. Disciplinary segregation may only occur after finding of a violation at an impartial hearing. At this time to days date is 4-23-18 and I have not been to a disciplinary hearing.

(ECF No. 35, p. 22).

On June 13, 2018, Plaintiff filed a fifth motion to supplement his Complaint asserting a claim for retaliation against Defendants Walker and Griffie. (ECF No. 59). Plaintiff alleges these

4

Defendants placed him in disciplinary segregation on January 31, 2018, in retaliation for Plaintiff's filing of the instant lawsuit against Defendant Campbell. On July 3, 2018, the Court granted Plaintiff's motion to supplement his Complaint. (ECF No. 68).

Plaintiff is suing Defendants in their official and individual capacities and seeks compensatory and punitive damages. He also states, "I wish to have Officer Campbell removed from the Miller County Staff as well as his job." (ECF No. 1, p. 7).

On October 12, 2018, Plaintiff filed a Motion for Summary Judgment arguing he is entitled to judgment on his claims as a matter of law against Defendants Campbell, Walker, Griffie and Hensley.[1] (ECF No. 77). On October 29, 2018, Defendants filed their Motion for Summary Judgment arguing they are entitled to summary judgment because: 1) verbal threats made by Defendant Campbell are not actionable under § 1983; 2) there is no constitutional right to press criminal charges; 3) there was no improper search or seizure of Plaintiff's legal mail; 4) Plaintiff was afforded his right to due process; 5) Plaintiff has not alleged that he suffered any physical injury as required for recovery of damages under 42 U.S.C. § 1997e(e); 6) Defendants did not retaliate against Plaintiff; 7) Defendants are entitled to qualified immunity; and 8) there is no basis for official capacity liability.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once

---

[1] All claims against Defendants Adams, Runion and Henderson were dismissed on June 27, 2018. (ECF No. 65).

a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id*. (*citing, Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

#### A. Verbal Threats

Plaintiff alleges Defendant Campbell violated his constitutional rights on December 5, 2017, when he verbally threatened Plaintiff by stating that he would "get" Plaintiff when he got out and stating that Plaintiff "put that on [his] kids." (ECF No. 1).

"Verbal threats do not constitute a constitutional violation." *Martin v. Sargent*, 780 F.2d 1334, 1339 (8th Cir. 1985). Similarly, taunts, name calling, and the use of offensive language does not state a claim of constitutional dimension. *McDowell v. Jones*, 990 F.2d 433, 434 (8th Cir. 1993) (inmate's claims of general harassment and of verbal harassment were not actionable under § 1983); *O'Donnell v. Thomas*, 826 F.2d 788, 790 (8th Cir. 1987) (verbal threats and abuse by jail

6

official did not rise to the level of a constitutional violation). Accordingly, Defendants are entitled to summary judgment on Plaintiff's claim relating to the verbal threat made by Defendant Campbell.[2]

### B. Failure to Institute Criminal Charges

Plaintiff alleges Defendant Walker violated his civil rights when she failed to assist Plaintiff in filing criminal charges against Defendant Campbell. This claim is without merit.

The law is clear that victims of a crime lack any legal right to compel criminal prosecution or institute criminal prosecution. *See Hurst v. Hurst*, No. 5:14-cv-05270-TLB, 2014 WL 5018827, at *2 (W.D. Ark. September 17, 2014) (citing *Diamond v. Charles*, 476 U.S. 54, 64-65 (1986)); *Frison v. Zebro*, 339 F.3d 994, 998-1000 (8th Cir 2003) (rejecting a § 1983 claim based on police officers' violation of a criminal statute); *In re Kaminski*, 960 F.2d 1062, 1064 (D.C. Cir. 1992) (private party lacks judicially cognizable interest in prosecution of another person). In addition, there is no constitutional right to have law enforcement officials investigate a reported crime. *See Sheets v. Mullins*, 287 F.3d 581 (6th Cir. 2002) (no due process or equal protection violation by sheriff's department sergeant in responding to a call reporting domestic violence). "The Due Process Clause of the Fourteenth Amendment does not impose upon the state an affirmative duty to protect its citizens [against illegal private acts], but rather, places limitations on affirmative state action that denies life, liberty, or property without due process of law." *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1065 (6th Cir. 1998) (*citing DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 195 (1989)).

---

[2] Plaintiff also argues his rights were violated because Defendant Campbell was reprimanded for behavior which violated an MCDC policy. "[A]n internal jail policy or procedure does not create a constitutional right, nor does a correctional official's failure to follow such regulation rise to the level of a § 1983 claim." *Brown v. Boone Cnty.*, No. 5:13-cv-03065-TLB, 2014 WL 4405433, at *5 (W.D. Ark. Sept. 5, 2014) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)).

Accordingly, Defendants are entitled to summary judgment on this claim.

## C. Opening of Plaintiff's Legal Mail

Plaintiff alleges Defendant Walker violated his constitutional rights when she opened his legal mail on one occasion when he was not present. This claim fails as a matter of law.

In *Gardner v. Howard*, 109 F.3d 427, 431 (8th Cir. 1997), the Eighth Circuit made clear that it had "never held or suggested that an isolated, inadvertent instance of opening incoming confidential mail will support a § 1983 damage action. . . . [A]n isolated incident, without any evidence of improper motive or resulting interference with [the inmate's] right to counsel or access to courts, does not give rise to a constitutional violation." Further, the seizure of a prisoner's legal papers by prison officials does not violate due process unless the seizure caused prejudice to the prisoner in a legal proceeding. *Johnson v. Hamilton*, 452 F.3d 967, 973 (8th Cir. 2006).

Here, Plaintiff alleged a single incident where his legal mail was opened when Plaintiff was not present. Defendant Walker submitted an affidavit stating she accidentally opened the item, did not view the contents of the envelope, and informed Plaintiff of the mistake. (ECF No. 85-7, p. 2). In addition, Plaintiff has not alleged that he suffered prejudice in any legal proceeding from the opening of his mail. Accordingly, Defendants are entitled to summary judgment on this claim.

## D. Due Process

Plaintiff claims he was denied procedural due process on two separate occasions when he was moved from Max D, the general population unit, to Max E, the unit used for administrative and punitive segregation. The first incident occurred on January 31, 2018, when Plaintiff was placed in segregation for seven days without receiving notice of a disciplinary violation or a

hearing. The second incident occurred on April 17, 2018, when Plaintiff was put in punitive segregation for disciplinary charges that were dismissed at a hearing held on April 26, 2018.

"In order to prevail on a Fourteenth Amendment due process claim, [the plaintiff] must first demonstrate that he was deprived of life, liberty, or property by government action." *Phillips v. Norris*, 320 F.3d 844, 846 (8th Cir. 2003). When deciding whether an individual was afforded procedural due process a court employs a two-step analysis. *See Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). First, the Court must determine whether the individual holds a protected liberty or property interest. *Id.* If the Court finds a protected interest, the question becomes whether the state provided sufficient due process prior to depriving that individual of the protected interest. *Id.*

"To prevail on such a claim based on prison housing, an inmate must show that the segregation created an 'atypical and significant hardship on [him] in relation to the ordinary incidents of prison life' to demonstrate that his liberty interest was curtailed." *Rahman X v. Morgan*, 300 F.3d 970, 973 (8th Cir. 2002) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). An inmate's liberty interests are limited to the nature of confinement and do not extend to procedural rules imposed by the state. *See Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996) ("If [the plaintiff] has a liberty interest, it is an interest in the nature of his confinement, not an interest in the procedures by which the state believes it can best determine how he should be confined."); *see also Swenson v. Trickey*, 995 F.2d 132, 134 (8th Cir. 1993) (holding that "[p]rocedural guidelines, such as a mandatory hearing, are not enough to create a liberty interest").

**1. January 31, 2018 segregation**

The record reflects that Plaintiff was placed in the Max E area of the MCDC on January 31, 2018 after Plaintiff began speaking loudly and using disrespectful language towards Defendant

9

Walker in the recreation yard. According to the affidavit of Defendant Walker, Plaintiff became so disruptive that she determined it was a safety and security risk and that other inmates might possibly be incited by Plaintiff's actions. Plaintiff remained in Max E until February 7, 2018, when he was returned to the general population. During the seven days he was in Max E, Plaintiff was permitted to be out of his cell for one hour each day. He was also allowed to shower, make phone calls, and use the kiosk.

The Court finds Plaintiff has failed to establish that any liberty interest was curtailed which would necessitate procedural due process while he was placed in segregation between January 31, 2018 and February 7, 2018. As previously stated, a prisoner has a liberty interest in freedom from restraints that impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life. Here, the short amount of time Plaintiff spent in segregation combined with the conditions of his confinement (an hour out of his cell each day, shower usage, access to the phone and kiosk) demonstrate he was not subjected to any significant hardship as compared to ordinary prison life. The Eighth Circuit has held that much longer periods in administrative segregation than that experienced by Plaintiff, with loss of privileges, does not implicate a liberty interest triggering due process protections. *See Orr v. Larkins*, 610 F.3d 1032, 1034 (8th Cir. 2010) (inmate was not deprived of liberty interest during nine months in administrative segregation); *Rahman X*, 300 F.3d at 974 (inmate's placement in administrative segregation for twenty-six months without a disciplinary charge or conviction and during which inmate could not watch television in his cell did not "demonstrate that his liberty interest was curtailed"); and *Furlough v. Brandon*, 2009 WL 4898418 (E.D. Ark. Dec. 15, 2009) (inmate plaintiff failed to state a due process claim after being assigned to administrative segregation for nearly nine months). *Cf.*

*Williams v. Hobbs*, 662 F.3d 994, 998 (8th Cir 2011) (concluding that 12-year confinement in administrative segregation triggered a liberty interest entitled to due process protection).

For these reasons, Defendants are entitled to summary judgment on Plaintiff's due process claim based on the segregation from January 31, 2018 until February 7, 2018.

### 2. April 17, 2018 Punitive Segregation

On April 17, 2018, Defendant Hensley accused Plaintiff of stealing a food tray. Plaintiff was placed in Max E pending the discipline charges against him. On April 23, 2018, Plaintiff was served with an MCDC Discipline Procedure and Notice form based on the theft allegations. On April 26, 2018, Plaintiff's charges were dismissed by the MCDC's Disciplinary Committee after the hearing officer considered all available evidence. Plaintiff claims his rights were violated because there was a delay from the time he was put in punitive segregation and when he received a hearing on the charges. He also claims that the dismissal of the charges against him prove Defendant Hensley filed false charges against him which violated his constitutional rights.

First, Plaintiff has not described any conditions of his confinement during the nine (9) days he was in punitive segregation before his hearing to demonstrate he was subjected to a dramatic departure from the basic conditions of his confinement. Simply being placed in disciplinary segregation is not an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Sandin*, 515 U.S. at 484, and thus is not the type of deprivation that creates a protected liberty interest. *See Phillips*, 320 F.3d at 847 ("We have consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship."). Therefore, Plaintiff has failed to identify any liberty interest that would require procedural due process.

Even if Plaintiff's placement in punitive segregation for nine days infringed upon Plaintiff's liberty interests, the Court finds that Plaintiff was provided procedural due process in

connection with his disciplinary confinement. Once an inmate has shown he has a viable liberty interest, correctional facilities must follow certain procedures to conduct an impartial due process hearing on a disciplinary matter. *Wolff v. McDonnell*, 418 U.S. 539 (1974)). These procedures include written notice of the charges, a brief period to prepare, a written statement of the evidence relied on and reasons for the disciplinary action, and the ability for the inmate to call witnesses and present documentary evidence. *Id.; see also Dible v. Scholl*, 506 F.3d 1106, 1110 (8th Cir. 2007).

In addition, there is no requirement under the Constitution or federal law that an inmate must receive a disciplinary hearing within a specified period. *Shannon v. Fabian*, Civil No. 09-03422, 2010 WL 1960181, at *5 (D. Minn. Mar. 8, 2010), adopted by *Shannon v. Fabien*, Civil No. 09-3422, at *1 (D. Minn. May 17, 2010). The Eighth Circuit has held that procedural due process requires that hearings must be held within a reasonable time after a prisoner is placed in detention. *See Swenson*, 995 F.2d at 134 (citing *Hewitt v. Helms*, 459 U.S. 460, 472 (1983)). A fifteen-day delay between the time an inmate was placed in segregation and afforded a hearing has been held to be reasonable. *See Hayes v. Lockhart*, 754 F.2d 281, 283 (8th Cir. 1985).

In this case, Plaintiff was given sufficient notice of his upcoming hearing, an opportunity to call witnesses (which he declined), and an opportunity provide a statement (which he did). The disciplinary committee dismissed the charges against Plaintiff nine days after he was placed in segregation and immediately returned him to general population.[3]

Finally, Plaintiff's claim that Defendant Hensley filed "false" charges against him fails to

---

[3]Although Defendants failed to abide by their own procedure of providing inmates charged with a disciplinary infraction with a hearing within forty-eight (48) hours of the incident, a state's failure to follow its own procedural rules does not create a federal due process violation. *See Diaab v. Terry*, 221 F.3d 1341 (8th Cir. 2000) (citing *Kennedy,* 100 F.3d at 643 and *Sandin*, 515 U.S. at 486).

state a constitutional claim. *See Daniels v. Ferguson*, 2008 WL 698485, *9 (W.D. Ark. March 13, 2008) ("To the extent Daniels contends his Due Process rights were violated because the disciplinary charges were fabricated or the events simply never occurred, courts have held that a prisoner enjoys no constitutional guarantee to be free from false charges that may lead to punishment.") (citing *Freeman v. Rideout,* 808 F.2d 949, 951 (2nd Cir. 1986) and *Glick v. Sargent*, 696 F.2d 413, 414 (8th Cir. 1983)).

For these reasons, Defendants are entitled to summary judgment on Plaintiff's due process claims arising from punitive segregation in April 2018.

**E. Retaliation**

Plaintiff alleges Defendant Walker and Defendant Griffie retaliated against him for filing the instant lawsuit against Defendant Campbell when she placed him in segregation on January 31, 2018.[4] Generally, "[c]onduct that retaliates against the exercise of a constitutionally protected right is actionable, even if the conduct would have been proper if motivated by a different reason." *Cody v. Weber*, 256 F.3d 764, 771 (8th Cir. 2001) (citing *Madewell v. Roberts*, 909 F.2d 1203, 1206 (8th Cir. 1990)). The retaliatory conduct itself need not be a constitutional violation to be actionable. Additionally, there is no independent injury requirement when retaliatory conduct is involved. *See Dixon v. Brown,* 38 F.3d 379, 380 (8th Cir. 1994). To prevail on his retaliation claim, Plaintiff must demonstrate: (1) he engaged in protected activity; (2) Defendants responded with adverse action that would "'chill a person of ordinary firmness' from continuing in the activity;" and (3) the adverse action was motivated at least in part by exercise of the protected

---

[4] In his Response to Defendant's Motion for Summary Judgment, Plaintiff states that Defendant Hensley retaliated against him when he filed false charges against him in April 2018. (ECF No. 90, p. 5). This claim is not properly before the Court because it was made for the first time in his response.

action. *See L.L. Nelson Enterprise Inc. v. County of St. Louis, Mo.,* 673 F.3d 799, 807-8 (8th Cir. 2012) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)).

There is no question that Plaintiff engaged in protected First Amendment activity when he filed this lawsuit. *See Lewis v. Jacks*, 486 F.3d 1025 (8th Cir. 2007). However, the Court finds Plaintiff has not presented any evidence to demonstrate that Defendant Walker's action of placing Plaintiff in segregation on January 31, 2018, was motivated by the filing of the instant lawsuit against Defendant Campbell. There is no evidence that Defendants Walker or Griffie knew about the present lawsuit before the summons were issued on February 2, 2018, a few days after Plaintiff was placed in segregation. (ECF Nos. 11, 12). In addition, Defendant Walker's affidavit states Plaintiff was placed into administrative segregation because Plaintiff was being disrespectful and disruptive, and she believed his conduct created a safety concern because it could incite the other inmates. (ECF No. 85-7, p. 1). Accordingly, Defendant Walker and Defendant Griffie are entitled to summary judgment on Plaintiff's claim of retaliation.

**F. Official Capacity Claims**

Plaintiff also sued Defendants in their official capacity. Official capacity claims are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In this case, Plaintiff's official capacity claims against Defendants are treated as claims against Miller County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to

an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). Here, Plaintiff has failed to produce any summary judgment evidence of a policy or custom of Miller County that contributed to the alleged violation of Plaintiff's constitutional rights. Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.[5]

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment (ECF No. 77) is **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 83) is **GRANTED.** Plaintiff's claims against all Defendants are **DISMISSED WITH PREJUDICE.** A judgment of even date shall issue.

**IT IS SO ORDERED,** this 26th day of February, 2019.

/s/ Susan O. Hickey
Susan O. Hickey
Chief United States District Judge

---

[5] Because there was no violation of Plaintiff's constitutional rights, it is unnecessary for the Court to address the issue of qualified immunity.